711 P.2d 1322

**Albert S. LANG, Plaintiff-Appellant,**

**v.**

**Maria E. LANG, Defendant-Respondent.**

**No. 15569.**

Court of Appeals of Idaho.

Dec. 2, 1985.

Rehearing Denied Jan. 27, 1986.

Petition for Review Denied
March 31, 1986.

Francis H. Hicks, Hicks & Frachiseur, Mountain Home, for plaintiff-appellant.

Perce Hall, Hall, Friedly & Roberts, Mountain Home, for defendant-respondent.

WALTERS, Chief Judge.

This appeal involves the classification and distribution of property in a divorce decree. Following the classification of the couple's assets, the magistrate found compelling reasons to award the wife a substantial portion of the community property, I.C. § 32–712. The husband appealed to the district court, arguing that the trial judge erred in finding any compelling reason for the unequal distribution of community property. He also alleged that the trial judge misclassified several items of his separate property and misclassified an accounting debt, incurred during the couple's separation, as a community debt. The district court affirmed the magistrate and this appeal followed. We conclude the magistrate erred in classifying and distributing to the wife certain household items of property. We order that the judgment be modified by awarding those items to the husband, and, as modified, we affirm.

The evidence in this case was described by the magistrate as "a legal and factual morass." Albert and Maria Lang were married May 18, 1978. Both parties were in their late fifties, widowed, and each possessed substantial assets prior to the marriage. Albert owned a home, a savings account, and a checking account in which his military retirement was deposited each month. Maria possessed several rental properties, a savings account, and various securities. Prior to the marriage, Albert relied on his military retirement for subsistence and Maria used investment income for her monthly living expenses. Neither party was employed during the marriage. The record indicates that during the marriage, the couple acquired several household items in addition to various stocks, bonds, and financial instruments.

Soon after they were married, Albert sold his home and the couple moved into Maria's house. Because Albert's furniture would not fit into Maria's home, they extensively remodeled Maria's home to accommodate Albert's furniture. The project cost approximately $60,000 and substantially depleted Maria's savings account.[1] After three years of marriage, Albert filed for divorce. Maria counterclaimed and the action was tried before a magistrate.

Albert appealed the magistrate's decision to the district court arguing that the magistrate erred: (1) in classifying Albert's separate property, consisting of a food processor, television, alarms, and three undivided units of National Municipal Trust as community property and awarding them to Maria; (2) in awarding substantially all the community property in the form of accumulated interest to Maria for reasons which were inadequate; and (3) in classifying an accountant's fee incurred by Maria as a community debt. The district court affirmed and Albert brings these same issues on appeal. We will address the issues in turn.

We begin our review by noting the appropriate standards of appellate review. The classification of assets as community property or separate property or a combination of both, involves questions of fact, law and discretion. "We are required to review 'the trial court (magistrate) record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings.'" *Gardner v. Gardner*, 107 Idaho 660, 662, 691 P.2d 1275, 1277 (Ct.App.1984); *Sherry v. Sherry*, 108 Idaho 645, 701 P.2d 265 (Ct.App.1985). "[W]hether a magistrate should divide the community estate equally or in another equitable fashion is a question of discretion, guided by statutory and case law." *Donndelinger v. Donndelinger*, 107 Idaho 431, 435, 690 P.2d 366, 370 (Ct.App.1984); *Bailey v. Bailey*, 107 Idaho 324, 689 P.2d 216 (Ct.App.1984). The magistrate classified the household items and the Municipal Trust units as community property, and the accounting fee as a community debt. He then found compelling reasons for an unequal distribution of the community property. We must, therefore, examine the record to determine whether the evidence supports the magistrate's classification of the property, and then examine whether the magistrate abused his discretion in finding compelling reasons for the unequal distribution of the community. *Bailey*, 107 Idaho at 327–28, 689 P.2d at 219–20.

### 1. The classification of the household items.

The magistrate found the following property was purchased during the marriage, out of the "earnings" of the parties: a food processor, television set, typewriter, telephone recorder, and burglar alarms. This property was classified by the magistrate as community property. Stating that "[a]lthough scant, if any, evidence was introduced as to the respective values of each item," the magistrate found that a fair

---

**1.** Part of the remodeling was funded by a loan from Albert to Maria. The repayment of that loan is not an issue in this appeal.

division of the property would be for Albert to receive the typewriter and recorder, while Maria was to receive the alarms, the television set, and the food processor.[2]

Albert asserts that the household items were acquired with funds from his checking account and, except for seven payments from the sale of his house, the source of this checking account was his military retirement. He contends that his retirement pay is an earned property right which had vested prior to the marriage. The status of an asset as community or separate property vests at the time of its acquisition. *Estate of Freeburn*, 97 Idaho 845, 555 P.2d 385 (1976). Thus, he maintains that his retirement pay should have been characterized as his separate property and the purchase of the household items with such funds also bears the same character. I.C. § 32–903. Section 32–903 provides that all property owned before marriage or acquired afterward "with the proceeds of his or her separate property, ... shall remain his or her sole and separate property."

■ The property status of military retirement has been a subject of much debate. However, this question has recently been settled by our Supreme Court in *Griggs v. Griggs*, 107 Idaho 123, 686 P.2d 68 (1984). Following the passage of federal legislation which permits the classification of military retirement pay "in accordance with the law of the jurisdiction,"[3] the Court held that military retirement was to be "classified as community or separate property 'according to whether the active service upon which the benefits are based took place prior to marriage or after marriage.'" *Id.* at 126, 686 P.2d at 71 (quoting *Ramsey v. Ramsey*, 96 Idaho 672, 678, 535 P.2d 53, 59 (1975)). Under the law as set out in *Ramsey*, military retirement is separate property to the extent it was earned prior to the marriage. 96 Idaho at 678, 535

P.2d at 59; *Griggs*, 107 Idaho at 126, 686 P.2d at 71. In this case, Albert's military service took place entirely before the marriage and, thus, his entire retirement pay must be classified as separate property.

The question still remains whether Albert demonstrated that his separate property, *i.e.*, his military retirement, was used to purchase the household items. Albert testified that the household items were purchased with funds from his checking account. He further testified that his checking account was used for household expenditures. The beginning balance for this checking account prior to the marriage was $2,520.58 and the ending balance was $2,091.51. Albert stated that the only deposits to the checking account were his monthly retirement checks of approximately $1,400 per month, seven payments from the sale of his home (including principal and interest), and Maria's deposit of $4,030 for the purchase of Minnesota Power and Light Stock. Albert's unrebutted testimony was that the funds used to purchase those household items came from his checking account. Maria did not present any evidence to the contrary, nor did she seek to establish that the household items were community property.

■ Albert has traced the funds used to purchase the household items to his checking account and Maria has not shown that the status of such property to be community property. Despite the fact that Maria's name also appeared on this checking account, the magistrate's finding that the household items were community property is clearly erroneous and must be set aside. I.R.C.P. 52(a). We will therefore remand for entry of a modified judgment awarding the burglar alarms, the television set and the food processor to Albert as his separate property.

---

2. Albert offered no evidence as to the value of these items. Although the trial court "must find the value of each material asset," this requirement is "limited to assets and debts upon which the court has been furnished substantial and competent evidence of the value or amount." *Donndelinger*, 107 Idaho at 437, 609 P.2d at 372.

3. Uniformed Services Former Spouses' Protection Act, Pub.L. No. 97–252, Tit. X, 96 Stat. 718, 730 (1982) (codified in pertinent part at 10 U.S.C. § 1408(c)(1) (1982)).

*2. The National Municipal Trust units.*

The couple created a money market account by making an initial deposit of $10,000 to the account. The record reveals that Albert contributed $9,085.76 from his savings account and Maria contributed $914.24 from the proceeds of a sale of separate property. The couple withdrew $7,000 from this account to buy a Jeep. Another $3,146.76 was withdrawn to purchase the indivisible National Municipal Trust units. With the account almost depleted, Maria deposited $11,300 into the account ($10,891.53 of separate property and $408.47 of undisclosed character). The couple then purchased a Boise State University Bond in the amount of $4,989.30 with interest-bearing coupons. The money market account was closed when the couple separated prior to the divorce and a $7,461.16 check (representing the closing balance) was made out to both Albert and Maria.

The magistrate found that Albert's contribution to the money market account came from his "earnings" and Maria's contribution came "from interest, dividends, or other like income from her investments."[4] The court determined that Albert's contribution was $9,085 and Maria's total contribution was $12,214. The trial court found that the sources of these monies were community property and therefore, the purchased property should be classified as community property and divided equally. The magistrate noted that his goal was to place the parties back in the same positions that they occupied before the parties opened the account. Albert was awarded the Jeep and his remaining contribution of $2,085 was to be satisfied from the account closing check. Maria was to receive the BSU bond and the Trust units for a combined value of $8,136. Her deficit amount of $4,079 was to be satisfied out of the closing account check.

■ Albert contends that the magistrate erred in classifying the Municipal Trust units as community property and subsequently awarding them to Maria. Albert attempts to rebut the presumption that all property acquired after marriage is community property. *Shumway v. Shumway*, 106 Idaho 415, 679 P.2d 1133 (1984). He attempted to trace the purchase of the Trust units to his separate property funds contained in his savings account. The party rebutting the presumption has the burden of proving the separate nature of such property with "reasonable certainty and particularity." *Gardner*, 107 Idaho at 662, 691 P.2d at 1277; *Estate of Freeburn*, 97 Idaho at 849, 555 P.2d at 389.

On appeal, the magistrate's findings of fact will not be disturbed unless they are clearly erroneous. *Nelson v. Holdaway Land & Cattle Co.*, 107 Idaho 550, 691 P.2d 796 (Ct.App.1984); *Crittenden v. Crane*, 107 Idaho 213, 687 P.2d 996 (Ct.App.1984); I.R.C.P. 52(a). Findings of fact which are based on substantial and competent, although conflicting, evidence are not clearly erroneous for purposes of reversal on appeal. *Pointner v. Johnson*, 107 Idaho 1014, 695 P.2d 399 (1985); *Newman v. Associated Systems, Inc.*, 107 Idaho 922, 693 P.2d 1124 (Ct.App.1985). Although the record indicates that Albert's deposit to the money market account came from his savings account, he failed to present particular and certain evidence which traced his deposit *to his separate funds* contained in the account. As long as separate property is identifiable and traceable, commingling of such separate property with community property does not convert separate property into community property. *Evans v. Evans*, 92 Idaho 911, 453 P.2d 560 (1969); *Stahl v. Stahl*, 91 Idaho 794, 430 P.2d 685 (1967). If direct tracing is impossible, the person asserting the separate character of the property may employ indirect tracing in the form of an accounting. *Martsch v. Martsch*, 103 Idaho 142, 645 P.2d 882 (1982). Albert did not meet his required burden of proof. Further, even if Albert's separate property went into the money

---

**4.** Although we may not agree with the magistrate's findings on the source of these funds, this difference does not affect the outcome of the issue.

market account, our examination of the record reveals that these funds were combined with Maria's separate property funds. Albert contributed $9,085 to the account and he received the Jeep and $2,085 in cash when the magistrate divided the property. Since Albert was fully reimbursed for his contribution to the account, we find that he was fully compensated for his interest. The record supports the magistrate's findings.

### 3. The division of the community property.

The magistrate found that Maria owned a Certificate of Deposit (CD) prior to the marriage. This CD matured during the marriage and was converted into a Current Interest Account. The CD earned $10,269.29 in interest during the marriage before it was converted. The Current Interest Account was supplemented by a $4,000 payment from the sale of Maria's separate farm property and an additional deposit of $60,000. The Current Interest Account earned between $24,517 and $27,594 in interest during the marriage. The magistrate correctly noted that the interest from this account was community property but found compelling reasons for an unequal distribution of this community income. The magistrate thus awarded the accumulated interest from this account to Maria.

As noted earlier, Maria had also deposited $4,030 into Albert's checking account to purchase 200 shares of Minnesota Power and Light stock. Maria obtained this money from the sale of her separate property stocks and bonds. The magistrate classified this stock as Maria's separate property but recognized that the dividends earned by this stock ($60) during the marriage were community property. The magistrate awarded the earned interest to Maria for the same reasons he awarded the accumulated interest from the current interest account above.

Albert asserts that the magistrate abused his discretion in failing to equally divide the couple's community property. Idaho Code § 32–712 requires that

"[u]nless there are compelling reasons otherwise, there shall be a substantially equal division in value, considering debts, between the spouses" of the community property. *Carr v. Carr*, 108 Idaho 684, 701 P.2d 304 (Ct.App.1985). Where the trial court elects an unequal division of community property, "our inquiry is whether, in the circumstances of the case, the judge has abused his discretion by doing so." *Bailey v. Bailey*, 107 Idaho at 328, 689 P.2d at 220.

Section 32–712 lists the factors which bear upon the decision whether to unequally distribute the community property. These factors include:

(1) Duration of the marriage; ... (3) The age, health, occupation, amount and source of income, vocational skills, employability, and liabilities of each spouse; (4) The needs of each spouse; ... (6) The present and potential earning capacity of each party; and (7) Retirement benefits, including, but not limited to social security, civil service, military and railroad retirement benefits.

I.C. § 32–712(b). The magistrate here found compelling reasons for an unequal distribution of the community property. The magistrate awarded Albert the $14,717.68 in interest from the sale of his home and awarded Maria the accumulated interest from her current interest account which approximated $25,000. The magistrate listed the following reasons for awarding the earned interest from the current interest account to Maria:

(1) The interest earned is directly related to the [Maria's] sole and separate property;

(2) Little, or no, community efforts were expended in acquiring the interest but was, rather, a result of the market conditions existing throughout the marriage;

(3) The duration of the marriage was comparatively short, only about 3 years of living together while one year was spent separate and apart;

(4) [Maria] must rely upon this investment to provide her with funds with

which to pay for all of her living expenses and [Albert] has his military retirement income as well as income from the sale of his residence;

(5) [Maria] has no retirement income or pension plan to aid her in her later years while [Albert] has no needs or worries in that respect; and

(6) [Maria] has no marketable skills to enable her to become employed, and her age indicates that it would be very unlikely that she could get a job involving even menial type of labor. On the other hand, [Albert] is a highly intelligent man, a retired Lt. Colonel, well-educated in various matters, and capable of being employed, if he so desired, in about any endeavor.

Our examination of the record reveals that the magistrate considered the factors stated in I.C. § 32–712 in distributing the community property. Albert was awarded the following community property: $14,717.68, from the accumulated interest on the sale of his home; $1,282 in interest on his savings account; and other miscellaneous payments. The record indicates Maria received the following community property: approximately $25,000 in accumulated interest from the current interest account; $60.00, in dividends from her Minnesota Power and Light Stock; $106, in dividends from the Municipal Trust; and other miscellaneous payments.

Judicial discretion requires a consideration of the facts and circumstances necessary to make a sound, fair, and just determination and an actual exercise of judgment. *Sheets v. Agro-West, Inc.,* 104 Idaho 880, 887, 664 P.2d 787, 794 (Ct.App.1983) (Burnett, J., specially concurring). "Where the trial court has exercised its discretion after a careful consideration of the relevant factual circumstances and principles of law, and without arbitrary disregard for those facts and principles of justice, that exercise of discretion has not been abused and will not be disturbed." *Decker v. Homeguard Systems, A Division of Intermountain Gas Co.,* 105 Idaho 158, 161, 666 P.2d 1169, 1172 (Ct.App.1983). Maria cor-

rectly points out that the magistrate's reasons (3)–(6) above are listed in I.C. § 32–712 as factors which may be considered in determining whether division of community property shall be equal. The magistrate determined that the circumstances of this case compelled an unequal distribution of the community property. The magistrate's findings of fact and conclusions of law parallel the factors listed in I.C. § 32–712 and provide appropriate grounds for the unequal distribution. We conclude that the magistrate did not abuse his discretion in making an unequal distribution of the community property and we will not substitute our discretion for that of the magistrate. *Sheets,* 104 Idaho at 888, 664 P.2d at 795.

### 4. The accountant's fee.

Maria retained a certified public accountant (CPA) to examine the vast array of the couple's holdings. The magistrate classified the accountant's fee as a community debt and ordered the payment of the debt with the closing check from the money market account which was determined to be community property. After the remaining balance of the money market fund was utilized to reimburse the parties for their contributions to the fund, the $1,297.16 left was to pay the community debt incurred for the accounting services. Any remaining amount was then to be divided equally between the parties.

■ Albert contends the magistrate erred in classifying the accountant's fee as a community debt. He contends the accountant was retained by Maria for the benefit of her separate property and without his consent. Because the debt for the accounting fee arose during the marriage, it is presumed to be a community debt. "A husband and wife remain married during separation, and any property acquired or *debts incurred* during that period are community in nature." *Donndelinger v. Donndelinger,* 107 Idaho 431, 439, 690 P.2d 366, 374 (Ct.App.1984) (emphasis added). Community debts are to be satisfied out of community property prior to the division and distribution of the balance to the spouses. *Id.* at 438, 690 P.2d at 343;

*Murphey v. Murphey*, 103 Idaho 720, 653 P.2d 441 (1982). Although the accountant was retained by Maria and he examined accounts which were eventually determined to be her separate property, the accountant's testimony touched on both Maria's separate property and the community's property. We conclude that the accountant's fee was a community debt and hold the magistrate properly awarded and discharged this community debt against the assets.

We remand to the district court to enter a modified judgment awarding to Albert the burglar alarms, the television set and the food processor. As modified, the judgment is affirmed. Each party to bear their own costs. No attorney fees on appeal.

BURNETT and SWANSTROM, JJ., concur.