Argued and submitted March 23, affirmed as modified November 28, 1984

In the Matter of the Marriage of

GRAFF,

*Respondent - Cross-Appellant,*

*and*

GRAFF,

*Appellant - Cross-Respondent.*

(D8204-68261; CA A28536)

691 P2d 520

Steven M. Rose, Portland, argued the cause for appellant - cross-respondent. With him on the brief was Rose and Senders, Portland.

Cynthia Cumfer, Portland, argued the cause and filed the brief for respondent - cross-appellant.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Husband appeals the property division portion of the decree of dissolution, contending that the income from a testamentary trust established by his mother should have been awarded to him as his sole and separate property. On cross-appeal, wife argues that she is entitled to a greater share of the trust and that the court erred in the valuation of the marital real property. We reverse on the appeal and affirm on the cross-appeal.

This dissolution ends a 16-year marriage. The parties are in their early forties and have two children, ages 16 and 14, both of whom are in wife's custody. In 1959, six years prior to the marriage, husband was involved in a car accident in which he sustained a fractured skull, massive brain damage and destruction of 75 percent of his optic nerve. He is legally blind and can see only with his left eye, which has a total field of vision of less than 20 percent. After the accident, he was in a coma for six weeks, after which he began a long period of rehabilitation, which included relearning to walk, talk, read and write. Husband's post-accident work has included managing a cafeteria and working as an unskilled laborer. The cafeteria management position was obtained for him by the Blind Commission and continued from 1972 to 1978; it ended when he became delinquent on his taxes because the cafeteria did not earn enough money to support him after wife quit assisting him in the work.

Husband is currently employed as a janitor on the night shift at a Holiday Inn, 40 hours a week, earning $5 an hour. Since the dissolution, husband has remarried[1] and is currently living with his new wife and her 11-year-old daughter. The new wife has an obligation to pay $75 per month child support for another child, and her gross earnings for 1982 were $11,000.

Wife is an employment specialist with the State of Oregon, earning gross income of $1,316 per month, with net

---

[1] The original decree was entered by default on June 1, 1982. Husband remarried in July, 1982, and thereafter filed a motion to set aside the decree. On February 2, 1983, the parties stipulated to setting aside the property division and support provisions of the decree. In the ensuing trial relating to those issues, evidence of husband's remarriage and the income of his new wife was admitted. *See* note 4, *infra*.

income of $873.97. She had a stroke in May, 1982, which caused her to miss two weeks of work. Since that time, health problems have necessitated her missing only three days of work.

In addition to wages, husband has received income since 1970 from a testamentary trust established by his mother.[2] By the terms of the trust, on husband's death the corpus goes to his children. The trustee, a bank, has the power to

"* * * make advances of principal to [husband] if the income is insufficient for the care, maintenance and medical attention of [husband], taking into consideration other funds and assets which should be first available to [husband] from his own resources."

Husband currently receives $600 per month from the trust, which represents approximately the total net income. The corpus of the trust at the time of the hearing was $100,894.24.

Husband is required by the decree to pay child support of $200 per child per month, for a total of $400 a month. No spousal support was awarded. Husband assigns as error the trial court's award to wife of 25 percent of the income earned by the trust after taxes, not to exceed $150 per month.

The statute governing the division of property in effect at the time the decree was entered was *former* ORS 107.105(1)(e),[3] which provided:

"(1) Whenever the court grants a decree of annulment or dissolution of marriage or of separation, it has power further to decree as follows:

"* * * * *

"(e) For the division or other disposition between the parties of the real or personal property, or both, of either or both of the parties as may be just and proper in all the circumstances. The court shall consider the contribution of a spouse as a homemaker as a contribution to the acquisition of marital assets. There is a rebuttable presumption that both

---

[2] During the marriage, husband inherited $25,000 from his father, which was spent by the parties in part as a down payment on their home and in part for living expenses.

[3] That subsection was amended by Oregon Laws 1983, chapter 728, section 2, and is now codified as ORS 107.105(1)(f).

spouses have contributed equally to the acquisition of property during the marriage, whether such property is jointly or separately held. Subsequent to the filing of a petition for annulment or dissolution of marriage or separation, the rights of the parties in the marital assets shall be considered a species of co-ownership, and a transfer of marital assets pursuant to a decree of annulment or dissolution of marriage or of separation entered on or after October 4, 1977, shall be considered a partitioning of jointly owned property. The court shall require full disclosure of all assets by the parties in arriving at a just property division. In arriving at a just and proper division of property, the court shall consider reasonable costs of sale of assets, taxes and any other costs reasonably anticipated by the parties."

■■ In *Pierson and Pierson,* 294 Or 117, 653 P2d 1258 (1982), the court held that *any* property owned by either party is subject to the dispositional authority of the court pursuant to the first sentence of that section of the statute, and that property acquired by either party during the marriage is a marital asset as that term is used in the statute, even if the acquisition is by gift or inheritance. Here, husband's right to receive the income from the trust was acquired during the marriage; it is, therefore, a marital asset, and wife is entitled to the rebuttable presumption of equality of contribution. As in *Pierson,* however, that presumption is overcome, because the property right was acquired by inheritance from husband's mother, uninfluenced by wife. It is clear from the mother's will that she established two identical trusts, one for each of her sons, with the remainder going to their respective children. By the terms of the trust, wife has no interest in the income or corpus, and there is no evidence that wife contributed in any way to husband's mother's creating the trust for husband or that she was an object of the donative intent.

Accordingly, wife is not entitled by virtue of the statutory presumption to share in husband's right to receive the trust income. Notwithstanding that conclusion, the court has authority to divide the "real or personal property, or both, of either or both of the parties as may be just and proper in all the circumstances." *Former* ORS 107.105(1)(e). Given the length of this marriage, under normal circumstances the property would be divided approximately equally. As the court pointed out in *Pierson,* however:

"The equation of property division and the entitlement of

a party to individually acquired property may be disturbed in order to accomplish broader purposes of a dissolution. There are social objectives as well as financial ones to be achieved and that may result in an uneven financial division. * * *" 294 Or at 123.

■ We believe that, in order to enable both parties to begin and maintain post-dissolution life with a degree of economic self-sufficiency, an unequal division of property is required and is achieved by not awarding wife any interest in the trust. Husband has a severe and permanent disability; he is legally blind and may have some degree of permanently diminished mental capacity resulting from the automobile accident. Although he is gainfully employed, that employment is as an unskilled laborer and his future employability and earning capacity is severely limited by his disabilities. Without the trust income, his income is less than that of wife.

Wife contends that her medical history also reveals a disability. She points out that she had a stroke in May, 1982; however, that event caused her to miss only two weeks of work, and since that time she has only missed three days because of illness of any sort. In addition, wife has high blood pressure, a B-12 deficiency and food allergies, all of which are controlled by medication and diet. There is nothing in the record to indicate that wife suffers from any diminished ability to work as a result of any of those problems. She is currently employed, has recently been promoted and expects to receive a raise in the very near future. Her future employment possibilities and earning capacity appear to us to be much greater than husband's. In short, wife's claimed disabilities pale beside those of husband.

■ Assuming that husband continues to receive $600 per month from the trust, his total gross income is approximately $20,000 per year;[4] wife's is $15,798 per year without the expected increase. Given husband's $400 per month child

---

[4] The modest ($697 per month) income of husband's new wife does not affect the equations significantly. Out of this amount, his new wife must pay $75 per month for child support and must support herself and her 11-year-old daughter, who lives with her. The new wife anticipates a sharp decrease in her earnings due to a work cutback and health problems. However, even if her income remained stable, it can do little more than support herself and her children.

support obligation,[5] his income is reduced and wife's is increased. Under all of the circumstances, we conclude that a just and proper division of property[6] requires that husband retain his life income from the trust. Having reached that conclusion, it is apparent that we reject wife's argument on cross-appeal that she be awarded a greater interest in the trust. We also reject wife's other contention on her cross-appeal.[7]

The decree is modified to award to husband all rights under the testamentary trust. Affirmed as modified. Costs to husband.

---

[5] The trial court properly considered husband's income from the trust in determining the amount of child support.

[6] Wife was awarded all of the parties' undivided one-half interest in their house, the other one-half interest being owned by her parents. The down payment on the house came from husband's inheritance from his father. The trial court valued the parties' net interest at $29,100. Wife was also awarded personal property that she valued at $6,725 and was required to pay debts of $2,250. The total value of wife's share is $33,575, if she receives no interest in the trust.

Husband was awarded personal property worth $2,550. The value of husband's right to receive the trust income for life is valued by his expert at about $29,000, and by wife's expert at $90,251. In our view, the two opinions represent extremes and are not very useful in working out the division of property. We assume that the value is somewhere between those extremes and that, as a result of our decision, husband will receive more than one-half of the marital property.

[7] Wife contends that the trial court over-valued the parties' undivided one-half interest in the real property; however, the court's value is based on what the parties paid for the property in 1979, notwithstanding improvements made by them after purchasing it.