116 P.3d 12

**A & J CONSTRUCTION CO., INC., Plaintiff–Appellant,**

v.

**Floyd WOOD, a/k/a Floyd D. Wood, an individual, Defendant–Respondent.**

No. 30743.

Supreme Court of Idaho.

June 21, 2005.

Ringert Clark Chtd., Boise, Idaho, for appellant. James G. Reid argued.

Foley, Freeman, Borton & Stern, Chtd., Meridian, Idaho, for respondent. Howard R. Foley argued.

JONES, J.

A & J Construction Co., Inc. (A & J) appeals from the district court's decision to grant Floyd Wood's summary judgment motion based upon judicial estoppel.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

A & J and Wood entered into a "Joint Venture Agreement and Option to Purchase Real Property" in 1979. Approximately 73 acres of real property near Homedale, Idaho, coined the "Sugar Beet Property," was purchased by Wood in October of that year pursuant to the joint venture agreement. The purchase price of the property was $172,948.43, which was in excess of the market value. The parties believed a highway bypass project was to be constructed along the property line and hoped to make a profit off the land; however, the project never materialized.

A & J filed for bankruptcy in 1991. The company did not list the Sugar Beet Property as an asset or disclose the joint venture agreement, and Wood was not listed as either a debtor or creditor in the bankruptcy schedules or disclosure statement. After A

& J filed for bankruptcy and it became clear the highway bypass project was not going to take place, nearly all of the property was sold through individual parcel sales negotiated by either A & J or Wood. A & J filed an action against Wood for an accounting of proceeds, also asserting claims for unjust enrichment, conversion and a decree quieting title. Wood filed a motion for summary judgment, asserting all claims were time-barred, and the motion was granted by the court. A & J was then granted leave to amend its complaint. In the amended complaint, A & J asserts a claim for an accounting of proceeds and distribution of profits based upon the existence of the joint venture. Wood filed a second motion for summary judgment, which he asserted should be granted based upon the statute of frauds and/or judicial estoppel. The court denied the motion based upon the statute of frauds, finding there were genuine, material issues of fact that prohibited the court from granting the motion on that basis. However, the court granted summary judgment in Wood's favor based upon judicial estoppel, finding there were no genuine, material issues of fact on that basis.

A & J asserts that judicial estoppel is inappropriate in this case for a number of reasons. In its brief, the company contends it "honestly believed, perhaps because of confusion, that its interest in the joint venture was not an asset." Since the value of the joint venture was exceeded by the associated debt at the time of the bankruptcy, the company claims its president did not consider the joint venture an asset. A & J claims, further, that the omission occurred because the company president was out of town at the time the bankruptcy filed, requiring his wife to furnish the pertinent information to the bankruptcy attorney, and she was unaware of the joint venture agreement. However, A & J also argues that the details relating to the joint venture were omitted from the bankruptcy filings because of the company's reliance on the advice of its counsel. The district court was not persuaded by A & J's arguments and found that A & J "made, at the very least, a tactical decision not to disclose and the Plaintiff may not assert that the reliance upon advice of bank-ruptcy counsel was either inadvertent or an excusable mistake." Consequently, the court held that A & J was judicially estopped from asserting claims related to the Sugar Beet Property and the joint venture between Wood and A & J because it had taken inconsistent positions in bankruptcy court and the district court and sought an advantage by taking the inconsistent positions. A & J's claims were dismissed with prejudice and this appeal followed. Wood requests attorney fees on appeal.

## II.

### STANDARD OF REVIEW

▮ The following standard of review applies here:

> In an appeal from an order granting summary judgment, this Court's standard of review is the same as that used by the trial court in ruling on the motion. Summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." This Court liberally construes all facts and all reasonable inferences in favor of the non-moving party.

*Summers v. Cambridge Joint School Dist. No. 432*, 139 Idaho 953, 955, 88 P.3d 772, 774 (2004) (citations omitted).

## III.

### ANALYSIS

**A. The District Court Did Not Err In Granting Wood's Motion For Summary Judgment.**

▮ Judicial estoppel precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position. *Sword v. Sweet*, 140 Idaho 242, 252, 92 P.3d 492, 502 (2004). The Idaho Supreme Court adopted the doctrine of judicial estoppel in *Loomis v. Church*, 76 Idaho 87, 277 P.2d 561 (1954). *Robertson Supply, Inc. v. Nicholls*, 131 Idaho 99, 101, 952 P.2d 914, 916 (Ct.App.

1998). This Court listed numerous court decisions from other states as support for adopting the doctrine and noted:

It is quite generally held that where a litigant, by means of such sworn statements, obtains a judgment, advantage or consideration from one party, he will not thereafter, by repudiating such allegations and by means of inconsistent and contrary allegations or testimony, be permitted to obtain a recovery or a right against another party, arising out of the same transaction or subject matter.

*Loomis,* 76 Idaho at 93–94, 277 P.2d at 565. The Idaho Court of Appeals further explained the doctrine as follows:

Essentially, this doctrine prevents a party from assuming a position in one proceeding and then taking an inconsistent position in a subsequent proceeding. There are very important policies underlying the judicial estoppel doctrine. One purpose of the doctrine is to protect the integrity of the judicial system, by protecting the orderly administration of justice and having regard for the dignity of judicial proceedings. The doctrine is also intended to prevent parties from playing fast and loose with the courts.

*Robertson Supply,* 131 Idaho at 101, 952 P.2d at 916 (internal citations omitted).

While Idaho appellate courts have applied the doctrine of judicial estoppel in a number of cases, the courts have not dealt with a situation where the first proceeding from which a party later takes an inconsistent position is a bankruptcy proceeding. The Ninth Circuit Court of Appeals provides guidance in a similar case, *Hamilton v. State Farm Fire & Cas. Co.,* 270 F.3d 778 (9th Cir.2001). Hamilton brought suit against State Farm for bad faith and breach of contract after the insurance company refused to pay his claims relating to alleged acts of theft and vandalism. *Hamilton,* 270 F.3d at 780. State Farm denied Hamilton's claim only a few days after Hamilton had filed for bankruptcy. *Id.* at 781. Hamilton's bankruptcy schedules listed the vandalism loss against his estate but failed to list the corresponding claims against State Farm as assets of the estate. *Id.* State Farm filed a motion to dismiss Hamilton's claims against the insurance company and the motion was granted based upon the doctrine of judicial estoppel. This decision was affirmed on appeal. *Id.* at 782. The Ninth Circuit Court of Appeals cited the following rule regarding application of the doctrine in the bankruptcy context:

In the bankruptcy context, a party is judicially estopped from asserting a cause of action not raised in a reorganization plan or otherwise mentioned in the debtor's schedules or disclosure statements. *Hay v. First Interstate Bank of Kalispell, N.A.,* 978 F.2d 555, 557 (9th Cir.1992) (failure to give notice of a potential cause of action in bankruptcy schedules and Disclosure Statements estops the debtor from prosecuting that cause of action); *In re Coastal Plains,* 179 F.3d 197, 208 (5th Cir.1999), *cert. denied,* 528 U.S. 1117, 120 S.Ct. 936, 145 L.Ed.2d 814 (2000) (holding that a debtor is barred from bringing claims not disclosed in its bankruptcy schedules); *Payless Wholesale Distributors, Inc. v. Alberto Culver (P.R.) Inc.,* 989 F.2d 570, 572 (1st Cir.), *cert. denied,* 510 U.S. 931, 114 S.Ct. 344, 126 L.Ed.2d 309 (1993) (debtor who obtained relief on the representation that no claims existed cannot resurrect such claims and obtain relief on the opposite basis); *Oneida Motor Freight, Inc. v. United Jersey Bank,* 848 F.2d 414, 419 (3rd Cir.), *cert. denied,* 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988) (debtor's failure to list potential claims against a creditor 'worked in opposition to preservation of the integrity of the system which the doctrine of judicial estoppel seeks to protect,' and debtor is estopped by reason of such failure to disclose).

*Id.* at 783.

The court went on to recite the following rationale for the rule:

The rationale for ... decisions [invoking judicial estoppel to prevent a party who failed to disclose a claim in bankruptcy proceedings from asserting that claim after emerging from bankruptcy] is that the *integrity of the bankruptcy system depends on full and honest disclosure by debtors of all of their assets.* The courts will not permit a debtor to obtain relief from the

bankruptcy court by representing that no claims exist and then subsequently to assert those claims for his own benefit in a separate proceeding. *The interests of both the creditors, who plan their actions in the bankruptcy proceeding on the basis of information supplied in the disclosure statements, and the bankruptcy court, which must decide whether to approve the plan of reorganization on the same basis, are impaired when the disclosure provided by the debtor is incomplete.*

*Id.* at 785 (quoting *In re Coastal Plains, Inc.*, 179 F.3d 197, 208 (5th Cir.1999)).

█ The Eleventh Circuit Court of Appeals has pointed out that a debtor seeking shelter under the bankruptcy laws is required to disclose all assets, or potential assets, to the bankruptcy court under 11 U.S.C. § 521(1), and 541(a)(7). *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1286 (11th Cir.2002). Full disclosure is " 'crucial to the effective functioning of the federal bankruptcy system.' " *Id.* Because both creditors and bankruptcy courts rely on the accuracy of the disclosure statements the court concluded, "the importance of full and honest disclosure cannot be overstated." *Id.* Responding to the debtor's arguments of lack of both privity and prejudice, the court noted that judicial estoppel protects the integrity of the judicial system, not litigants, so numerous courts have held that " '[w]hile privity and/or detrimental reliance are often present in judicial estoppel cases, they are not required.' " *Id.* Additionally, parties asserting judicial estoppel are not required to demonstrate individual prejudice since courts have concluded that the doctrine is intended to protect the judicial system. *Id.*

█ In *Hamilton* the Ninth Circuit said it was immaterial that the debtor filed for bankruptcy before he filed suit against State Farm, holding, "Judicial estoppel will be imposed when the debtor has knowledge of enough facts to know that a potential cause of action exists during the pendency of the bankruptcy, but fails to amend his schedules or disclosure statements to identify the cause of action as a contingent asset." *Id.* at 784. The duty to disclose all assets and potential assets continues after the initial filing since a

debtor is required to amend his or her financial statements if circumstances change. *Burnes,* 291 F.3d at 1286. Consequently, in this case it is irrelevant that the president's wife was purportedly unaware of A & J's interest in the property or joint venture when she met with A & J's attorney to initiate the bankruptcy filing. Clearly, A & J had the opportunity to amend its bankruptcy schedules after the president returned and became aware of the omission. In any event, it was not the president's wife who was seeking bankruptcy protection. A & J, the corporation, was the party filing for bankruptcy and it is the corporation's knowledge, not that of just one officer, that is relevant. The president's wife, who was corporate secretary, declared under oath that the statement of financial affairs was accurate at the time of filing: the president later verified under oath that the disclosure statement was correct. The corporation knew of the asset but did not disclose it to the bankruptcy court.

A & J argues that the joint venture was omitted due to the president's erroneous belief that the joint venture was not an asset because the debt against it allegedly exceeded its value. This is often the case in a bankruptcy and there is no justification for a debtor to exclude an asset based on the debtor's subjective determination of its value. And, if there was a debt, it should have been listed. The record discloses that the company's interest in the joint venture was known to A & J and disclosed to its attorney. At the time the joint venture was discussed with the attorney, the schedules and disclosure statement should have been amended to reflect the company's interest because the bankruptcy was still pending.

As mentioned, A & J first contended the joint venture interest was excluded because the corporate secretary had no knowledge of the asset. It was then contended that the asset was known but not listed because it had no value. In a seemingly inconsistent argument, A & J then contends that judicial estoppel is inappropriate because the company had relied upon advice from counsel in excluding the asset from the bankruptcy filings. A & J cites *McKay v. Owens*, 130 Idaho 148, 937 P.2d 1222 (1997), for the

proposition that the doctrine should not apply where the first position was taken because of mistake, inadvertence, innocently, or if the inconsistency is reconcilable, and urges this Court to find that this rule applies in this case. However, as previously stated, the facts indicate that the company's interest in the joint venture was disclosed to its attorney and a deliberate decision was made to not list the interest on bankruptcy papers. In its brief, A & J states:

> Plaintiff relied upon its attorney's advice with regard to the preparations of all bankruptcy filings and trusted his judgment with regard to how assets and debts were scheduled, listed, and/or disclosed. Details related to the joint venture were omitted from Plaintiff's bankruptcy filings because of advice and efforts of [A & J's bankruptcy attorney], not because of deliberate intention by Plaintiff to mislead the Bankruptcy Court.

Additionally, the president of A & J states in an affidavit, "details of the joint venture were discussed with the Company attorney … along with all of the Company financial matters. [The attorney] then put together the schedules which did not include the details related to the joint venture." The district court found the evidence demonstrated that A & J knew there may be some value to the joint venture, pointing out that the joint venture was a business investment and the parties considered selling the property after it became clear that the highway project was not going to take place. The court stated "clearly, it is a potential value" and was not disclosed in bankruptcy court. This Court agrees with the district court's conclusion that following the advice of counsel is not equivalent to inadvertence or mistake and appears to have been a strategic decision made in preparation for bankruptcy court.

At oral argument, A & J remarked that in *New Hampshire v. Maine,* 532 U.S. 742, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001), the United States Supreme Court laid out three factors courts may consider when determining whether to apply the doctrine of judicial estoppel. First, courts may look at whether a party's later position is "clearly inconsistent" with its prior position. *New Hampshire,* 532 U.S. at 750, 121 S.Ct. at 1815, 149 L.Ed.2d at 977. Secondly, courts may look at whether the party succeeded in persuading the court to accept its prior position, so that acceptance of the later position would create "the perception that either the first or the second court was misled." *Id.* Finally, courts may consider whether the party asserting the inconsistent position "would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 751, 121 S.Ct. at 1811, 149 L.Ed.2d at 978. A & J argues that the application of the doctrine in this case is erroneous because its failure to disclose the real property and joint venture in the bankruptcy proceeding does not result in an unfair advantage for A & J or an unfair detriment to Wood, thus not satisfying the third factor. However, as emphasized in *Hamilton,* these are factors a court *may* consider, so these are not required elements. *Hamilton,* 270 F.3d at 782. The Supreme Court in *New Hampshire* held, "[t]he circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle." *New Hampshire,* 532 U.S. at 750, 121 S.Ct. at 1815, 149 L.Ed.2d at 977 (citing *Allen v. Zurich, Ins. Co.,* 667 F.2d 1162, 1166 (4th Cir.1982)); *Lowery v. Stovall,* 92 F.3d 219, 223 (4th Cir.1996); *Patriot Cinemas, Inc. v. General Cinema Corp.,* 834 F.2d 208, 212 (1st Cir.1987). Even if the third factor is considered by this Court, the outcome in this case would be the same. In a discussion of the third factor, the Ninth Circuit Court of Appeals noted that a debtor, once he institutes the bankruptcy process, "disrupts the flow of commerce and obtains a stay and the benefits derived by listing all his assets." *Hamilton,* 270 F.3d at 785. The court noted that Hamilton enjoyed the benefit of both an automatic stay and a discharge of debt in his bankruptcy proceeding. *Id.* In this case A & J also enjoyed the benefits gained by filing for bankruptcy. The disclosure statement reflects that A & J's unsecured creditors relied on the nondisclosure and accepted payment on a pro rata basis, meaning they were not paid in full. A & J received a discharge of unsecured indebtedness when its reorganization plan was approved in December 1991.

While there is no Idaho case with similar facts, it seems clear that the doctrine of judicial estoppel applies here. The doctrine clearly prohibits "a party from assuming a position in one proceeding and then taking an inconsistent position in a subsequent proceeding." *Robertson Supply*, 131 Idaho at 101, 952 P.2d at 916. It is undisputed that A & J succeeded in persuading the bankruptcy court to accept its prior position, in which it failed to disclose any interest in either the real property subject to the dispute or the joint venture agreement. Now, A & J takes an inconsistent position by seeking to have the courts determine the existence, nature and extent of its interest in the nondisclosed real property and joint venture agreement. This Court affirms the district court's decision to grant Wood's motion for summary judgment on the basis of judicial estoppel.[1]

### B. Wood Is Not Entitled To Attorney Fees On Appeal.

 Wood requests attorney fees on appeal. However, Wood has failed to satisfy the requirements set forth in I.A.R. 35(b). Idaho Appellate Rule 35(b)(5) states, "If the respondent is claiming attorney fees on appeal the respondent must so indicate in the division of additional issues on appeal that respondent is claiming attorney fees and *state the basis for the claim.*" (Emphasis added). Wood's brief states no more than the following in regards to attorney fees on appeal: "Respondent makes a request for an award of attorney fees on appeal." Additionally, Idaho Appellate Rule 35(b)(6) requires respondent's arguments to contain "citations to the authorities, statutes and parts of the transcript and record relied upon." He does not cite a statute upon which fees could be awarded nor does he cite a contract provision or any other authority that would allow this Court to award him attorney fees. Because Wood does not state a basis upon which

attorney fees could be granted in accordance with I.A.R. 35(b)(5) or provide argument on this issue as required by I.A.R. 35(b)(6), this Court declines to award his request for attorney fees.

### IV.

### CONCLUSION

The district court's decision to grant summary judgment in favor of Wood is affirmed. Wood's request for attorney fees on appeal is denied. Costs are awarded to Wood.

Chief Justice SCHROEDER, Justices TROUT and BURDICK, and CAREY, Pro Tem, concur.

---

1. Although the parties did not raise the issue on appeal, the record indicates that A & J may not have standing to pursue its claim. Under bankruptcy law, pre-petition assets and claims are the property of the bankruptcy estate which is created when a bankruptcy petition is filed. If a debtor fails to carry out his affirmative duty to schedule any such asset or claim, it continues to belong to the bankruptcy estate. *Cusano v. Klein*, 264 F.3d 936, 945–6 (9th Cir.2001). When a debtor fails to disclose an asset or claim, the trustee is the real party in interest with exclusive standing to pursue it. *Wieburg v. GTE Southwest, Inc.*, 272 F.3d 302, 306 (5th Cir. 2001). That said, however, we do not consider the issue here because neither party raised it on appeal.